730 So.2d 101 (1998)
Susan SOILEAU, Appellant,
v.
MISSISSIPPI COAST COLISEUM COMMISSION, Appellee.
No. 97-CA-01409 COA
Court of Appeals of Mississippi.
December 18, 1998.
*102 John B. Perry, Attorney for Appellant.
Stephen Peresich, Kaara L. Liskow, Biloxi, Attorney for Appellee.
BEFORE McMILLIN, P.J., COLEMAN, AND SOUTHWICK, JJ.
*103 SOUTHWICK, J., for the Court:
¶ 1. Susan Soileau, joined by her husband, Michael Soileau, brought suit for injuries she sustained while attending a concert at the Mississippi Coast Coliseum. The circuit judge dismissed the complaint due to the Soileaus' failure to comply with the notice provisions of the Mississippi Tort Claims Act. The Soileaus appeal arguing that this was error. We disagree and affirm.

FACTS
¶ 2. On October 14, 1995, Susan and Michael Soileau were attending a Bob Dylan concert held at the Mississippi Coast Coliseum. While making her way to the refreshment area, Susan tripped over an uncovered electrical cable which was lying unsecured on the floor. She fell and injured her left knee. The Soileaus sought medical attention from the emergency medical technician on duty at the Coliseum and filled out an incident report which described the accident. This incident report was signed by the Coliseum's chief executive director, Bill Holmes. Susan was also interviewed by counsel for the Coliseum, who prepared a narrative based on Susan's account. The Soileaus then left the concert in order to have Susan's knee x-rayed at an emergency room.
¶ 3. Three months later, on January 16, 1996, the Soileaus' attorney mailed a letter addressed to the "Mississippi Coast Coliseum" advising of his representation of the Soileaus and requesting that the letter be forwarded to the Coliseum's insurance carrier. Between January and September of 1996, the Soileaus' attorney corresponded with the attorney for the Coliseum and the Coliseum's insurance adjuster. On September 12, 1996, the Soileaus submitted copies of Susan's medical records and bills to the adjuster, demanding $20,885 in settlement of the claim.
¶ 4. After efforts to settle the claim failed, the Soileaus filed suit on November 1, 1996, against the Mississippi Coast Coliseum Commission and the concert promoter, Leas Campbell Presents. The complaint was later amended to dismiss Michael Soileau's loss of consortium claim. In their answer, the Coliseum and Leas Campbell Presents argued that the Soileaus had failed to comply with the notice provisions of the Mississippi Tort Claims Act. The Act mandates that notice of a claim against a governmental entity be given to its chief executive officer at least ninety days prior to the filing of a lawsuit. The Coliseum filed a motion for summary judgment on September 5, 1997, arguing that the Soileaus had failed to give the requisite notice to Bill Holmes, the chief executive officer of the Coliseum. The Soileaus responded by arguing that the chief executive officer had notice, which was given through the incident report prepared by the Coliseum and the correspondence exchanged between their attorney, the Coliseum's attorney, and the Coliseum's insurance adjuster.
¶ 5. Following a hearing held on September 22, 1997, the circuit judge granted the Coliseum's motion for summary judgment. The court found that the statute was jurisdictional, and as a result of the Soileaus' failure to comply with its notice provisions, the court had no jurisdiction over their claim. A final judgment dismissing Susan Soileau's claim was entered on October 15, 1997. This appeal does not concern any liability of the promoter, Leas Campbell Presents.

DISCUSSION

Compliance with Section 11-46-11
¶ 6. Soileau claims that the initial incident report, coupled with the correspondence between her attorney, the Coliseum's attorney, and the Coliseum's insurance adjuster constitutes compliance with the notice provisions of the Mississippi Tort Claims Act. The argument is that through a variety of documents the Coliseum had all the notice required by the Act.
¶ 7. Before discussing each element of notice, we will examine the purpose of the notice provisions. It is to give the chief executive officer of a governmental entity formal, advance notice of planned litigation against it. City of Jackson v. Lumpkin, 697 So.2d 1179, 1181 (Miss.1997). "Notice provisions encourage settlement of claims prior to entering litigation, therefore conserving valuable governmental resources. Further, notice *104 to the governmental entity encourages corrective actions, where necessary, prior to litigation, therefore benefitting public health and welfare." Vortice v. Fordice, 711 So.2d 894, 896 (Miss.1998).
¶ 8. The statute states this:
(1) ... ninety (90) days prior to maintaining an action thereon, such person shall file a notice of claim with the chief executive officer of the governmental entity....
(2) The notice of claim required by subsection (1) of this section shall be in writing, delivered in person or by registered or certified United States mail. Every notice of claim shall contain a short and plain statement of the facts upon which the claim is based, including the circumstances which brought about the injury, the time and place the injury occurred, the names of all persons known to be involved, the amount of money damages sought and the residence of the person making the claim at the time of the injury and at the time of filing the notice.
Miss.Code Ann. § 11-46-11 (Supp.1998).
¶ 9. The statute has separate requirements of form, relevant information, mode of delivery, and recipient. We will examine each.
¶ 10. 1. Form. The statutory language implies a single document. We draw that inference from the fact that "notice" is to be mailed or delivered 90 days before suit, which would appear to be one delivery or mailing at that time. Every "notice of claim" is to contain certain things, again implying that there is one notice. If the governmental entity is going to know that the final step of the pre-litigation process is being invoked, the notice of that would best gather together in one delivery all the components that are required. That is not to say that one delivery could not include a central document with attachments.
¶ 11. Even if a claimant could comply with the Act by submitting several documents that when joined comprise a single "notice of claim," we do not find that the documents can be delivered over a several month period during prelitigation communications. The notice is the announcement that suit is imminent if agreement is not reached. Diffused, even somewhat confused notice staggered over months of contacts does not provide the certain notice required under the statute.
¶ 12. Finally as to form, we hold that the notice by a claimant must in fact be sent by the claimant. The incident report prepared by the Coliseum itself, even if based on an interview with the claimants, is not the notice which the Act contemplates. An incident report prepared by the Coliseum as part of its standard procedure for dealing with injuries sustained on the premises, does not provide "notice" that a lawsuit is imminent. An interview with the claimant conducted by a news reporter, printed in the local newspaper, and read by the chief executive officer, would provide equivalent notice as was given here and would be similarly divorced from the formal notice procedure required by the statute. Aside from the Coliseum's own report, Soileau can point to nothing which provides the requisite information.
¶ 13. 2. Required Information. In order to comply with the Act, certain information must be contained in the notice of claim. It must contain "a short and plain statement of the facts upon which the claim is based, including the circumstances which brought about the injury, the extent of the injury, the time and place the injury occurred, the names of all persons known to be involved, the amount of money damages sought and the residence of the person making the claim at the time of the injury and at the time of filing the notice." Miss.Code Ann. § 11-46-11 (Supp.1998).
¶ 14. Soileau claims that the incident report, along with the correspondence regarding the accident, sufficiently provides this information. We have already discussed why the incident report prepared on the night of the accident cannot substitute for the formal notice that is supposed to be given by the claimant on the eve of suit. Moreover, no single document or single delivery of documents and attachments contains the necessary information. The extent of injuries and the amount of money damages is not in the incident report, and arguably these were indeterminable *105 at that early stage. Soileau maintains that her settlement letter of September 12, 1996, with her medical records and bills attached, provided this information in a timely fashion.
¶ 15. Although the Act does not expressly prohibit supplementing the information provided, it does require that all of the information be provided the chief executive officer ninety days before the filing of a lawsuit. Only over time was most of the information provided the Coliseum, if enough different documents that did not refer to each other were examined.
¶ 16. It is also unlikely that the submission of medical bills and records alone suffices even if it had been timely. Merely submitting medical bills does not constitute a notice of claim required by the Act. City of Jackson v. Lumpkin, 697 So.2d 1179, 1182 (Miss.1997).
¶ 17. 3. Mode of delivery and recipient. Even if Soileau had filed the proper notice of claim containing the requisite information, she failed to follow the proper procedure set out in the Act. In order to sue a governmental entity for personal injury, "ninety (90) days prior to maintaining an action thereon, [any] such person shall file a notice of claim with the chief executive officer of the governmental entity...." Miss.Code Ann. § 11-46-11 (Supp.1998 ). Moreover, this notice shall be "in writing and delivered in person or by registered or certified U.S. mail." Id.
¶ 18. Soileau claims that she complied with this provision, citing the fact that the incident report was reviewed and signed soon after the incident by the Coliseum's chief executive officer, Bill Holmes. She further contends that because he reviewed and signed it, the report must have been delivered to him in person.
¶ 19. Our previous example of the newspaper report of the accident, which hypothetically could be based on personal statements of the claimant, is again relevant. Compliance with the obligation to deliver or send by registered mail the notice of claim is not shown by proof that the chief executive officer learned of the claim through other means.
¶ 20. The formality of the notice is explicit in the statute. The formality can be seen as serving a purpose in addition just to providing specific information to a specific individual, information that the individual may have received from other sources. Like a complaint that starts the litigation itself, the notice brings together in one document (with attachments if necessary), delivered under the procedures and to the person set out in the rules, the outline of the facts and the claim for specific damages. The pre-suit notice of claim is an alert to the chief executive office of the last opportunity to resolve the dispute without litigation. A legislative decision was made to require the notice. The judicial decision has been to enforce it as written. We do, and the notice here failed to meet the requirements. As has often been noted, the result can be harsh and may be here. Carpenter v. Dawson, 701 So.2d 806, 808 (Miss.1997). What has not been remarked, but may be equally true if less provable, is that the notice may help resolve disputes in a more effective manner than if the notice requirement did not exist.
¶ 21. The concurring opinion goes even further than noting that harsh results can occur. It states that the notice provision has "consistently been used to snare unaware claimants whose claims are investigated toward settlement until the statute of limitations has run." There is no evidence in this case that the Coliseum ensnared Soileau. It appears that the Coliseum worked with the claimant and her attorney in a proper manner, though not reminding counsel of the notice provision any more than potential defendants normally remind claimants of other procedural deadlines.

Statute of limitations
¶ 22. As a result of Soileau's failure to file a proper notice of claim, her suit is timebarred. Under Miss.Code Ann. § 11-46-11, "[a]ll actions brought under the provisions of this chapter shall be commenced within one (1) year next after the date of the ... conduct on which the liability phase of the action is based ... provided, however, that the filing of a notice of claim ... shall serve to toll the statute of limitations for a period of *106 ninety-five (95) days." Miss.Code Ann. § 11-46-11 (Supp.1998). Soileau's injury occurred on October 14, 1995, and she filed suit over one year later, on November 1, 1996. The limitations period was not tolled for ninety-five days due to her lack of compliance with the Act. As a result, her claim is barred by the statute of limitations.
¶ 23. The grant of summary judgment in favor of the Coliseum was proper.
¶ 24. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF SUMMARY JUDGMENT IN FAVOR OF THE APPELLEE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN AND THOMAS, P.JJ., COLEMAN, HERRING, HINKEBEIN, AND KING, JJ., CONCUR.
PAYNE, J., CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY DIAZ, J.
BRIDGES, C.J., DISSENTS WITHOUT WRITTEN OPINION.
PAYNE, J., CONCURRING,
¶ 25. For the same reasons stated in my concurring opinion in Watts v. Lafayette County Sch. Dist., 97-CA-01089, ___ So.2d ___, 1998 WL 850107 (Miss.App.1998), I join in this decision with great reservation. This remedial legislation has consistently been used to snare unaware claimants whose claims are investigated toward settlement until the statute of limitations has run. The Mississippi Supreme Court's demand of such a literal and punitive interpretation of this statute constitutes, in my opinion, "gotcha jurisprudence."
DIAZ, J., JOINS THIS SEPARATE WRITTEN OPINION.