# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00224-SCT

*SHIRLEY K. WILLIAMS*

*v.*

*CLAY COUNTY, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/7/2002 |
| TRIAL JUDGE: | HON. JOHN M. MONTGOMERY |
| COURT FROM WHICH APPEALED: | CLAY COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JIM WAIDE |
| | BRENT HAZZARD |
| ATTORNEY FOR APPELLEE: | KATHERINE S. KERBY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 11/13/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1.     Shirley K. Williams appeals the dismissal of her action for failure to state a claim on the basis that the action was time barred under the one-year statute of limitations contained in the Mississippi Tort Claims Act (MTCA).[1] *See* Miss. Code Ann. § 11-46-11 (Rev. 2002). Williams's suit is brought under the MTCA because she injured herself when she fell down the stairs at the Clay County Courthouse. Concluding that the circuit court correctly found that Williams did not timely file her suit, we affirm.

---

[1]Miss. Code Ann. §§ 11-46-1 to -23 (Rev. 2002 ).

**FACTS**

¶2.　　On November 1, 1999, Shirley Williams fell down the stairs at the Clay County courthouse, tearing her pantsuit.  She immediately asked to see the Chancery Clerk of Clay County, Robbie Robinson.  After Robinson attended to Williams, Williams went home and did not immediately see a doctor.

¶3.　　Later that month, Williams sent Robinson a letter thanking him for his assistance after the fall. She wrote that the pantsuit she was wearing at the time of the fall was badly torn and needed replacement.  Robinson forwarded a check to Williams for the amount of the pantsuit. Williams never cashed the check.

¶4.　　In early 2000, Williams noticed that her knee was still sore from the fall.  Soon thereafter, she began seeing a doctor.

¶5.　　Williams had an appointment to meet with the Clay County Board of Supervisors on March 16, 2000, but all of the Board members were not present.  Williams did meet with Shelton Dean, the president of the Board, and Board member Darrell Meyers.  Williams told Shelton and Meyers about her injury and that she had been seeing a doctor who recommended that she see a specialist.

¶6.　　Williams phoned Robinson later that day.  Robinson told her that Clay County was willing to pay any valid medical claims. He also told her he had put his insurance company on

notice of Williams's claim. This conversation was confirmed via a letter to Williams's attorney, Jim Waide, on February 13, 2001.[2]

¶7.    Williams eventually had surgery on her knee. She filed this lawsuit against the County on January 31, 2001. Clay County filed a motion to dismiss claiming that Williams' pre-suit notice did not meet the requirements of the Tort Claims Act and did not toll the statute of limitations. The trial judge granted Clay County's motion.

## STANDARD OF REVIEW

¶8.    A motion to dismiss under Miss. R. Civ. P. 12(b)(6) raises an issue of law. *Burgess v. City of Gulfport*, 814 So. 2d 149, 151 (Miss. 2002) (collecting authorities). We conduct a de novo review of questions of law. *Id*. (citing *T.M. v. Noblitt*, 650 So. 2d 1340, 1342 (Miss. 1995)). When considering a motion to dismiss, the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond a reasonable doubt that the plaintiff will be unable to prove any set of facts in support of his claim. *Id*. at 1342.

## DISCUSSION

### I.    WHETHER WILLIAMS SUBSTANTIALLY COMPLIED WITH THE NOTICE REQUIREMENTS OF THE MTCA.

¶9.    The Mississippi Torts Claim Act diminished sovereign immunity for state governmental entities. Under the Act, a plaintiff may sue a governmental entity provided the action is

---

[2] This letter was sent after Williams filed the instant lawsuit.

brought within one year of the injury and proper notice of the claim is given to the governmental entity. Miss. Code Ann. § 11-46-11(3) (Rev. 2002). Proper notice:

> shall be in writing, and shall be delivered in person or by registered or certified United States mail. Every notice of claim shall contain a short and plain statement of the facts upon which the claim is based, including the circumstances which brought about the injury, the extent of the injury, the time and place the injury occurred, the names of all persons known to be involved, the amount of money damages sought and the residence of the person making the claim at the time of the injury and at the time of filing the notice.

Miss. Code Ann. § 11-46-11(2) (Rev. 2002).

¶10. We required strict compliance with the Act's notice requirements until we issued our opinion in *Reaves ex rel. Rouse v. Randall*, 729 So. 2d 1237 (Miss. 1998), where we held that substantial compliance was all that was needed in order to satisfy the Act's notice requirement. Later, in *Carr v. Town of Shubuta*, 733 So.2d 261 (Miss. 1999), we provided this standard for substantial compliance:

> What constitutes substantial compliance, while not a question of fact but one of law, is a fact-sensitive determination. In general, a notice that is filed within the [requisite] period, *informs the municipality of the claimant's intent to make a claim* and contains sufficient information which reasonable affords the municipality an opportunity to promptly investigate the claim satisfies the purpose of the statute and will be held to substantially comply with it.

*Id*. at 263 (emphasis added) (quoting *Collier v. Prater*, 544 N.E.2d 497, 498-99 (Ind. 1989)). Even though substantial compliance is sufficient, "we stress that substantial compliance is not the same as, nor a substitute for, non compliance." *Carr*, 733 So.2d at 265.

4

¶11.   Williams fell on November 1, 1999. Soon after, she wrote to Chancery Clerk Robinson as follows:[3]

> As you may remember, on November 1, 1999, while leaving the courthouse building on Court Street, I stepped in a hole at the building's exit. Losing my balance, I fell down several flight[s] of steps. I appreciate the assistance you gave in attempting to help relieve my injuries. The pants to the suit that I was wearing was also badly torn. At that time you told me that the county would pay for the damage done to my clothes. Since then I have looked for another pair of pants that would match the suit jacket. The search, however, has been to no avail. I have been told that the tear is irreparable.
>
> I am, therefore, writing to let you know that I purchased the suit from Parisians in Alabama and paid $349.00 plus the 8% Alabama state tax ($27.92) for it. I would appreciate your assistance in helping to resolve this matter as soon as possible. You may reach me at the above address of by phone at. . . . I await your reply.

¶12.   This letter by itself does not substantially comply with the notice of claim requirements of Miss. Code Ann. § 11-46-11. However, on March 16, 2000, Williams spoke with two county supervisors and also spoke with Robinson. During these conversations she informed both the supervisors and Robinson of her injuries. Robinson acknowledged the conversation with Williams in a letter written to Williams's attorney:

> As we discussed last evening the county has always been willing to pay any and all valid medical claims for the above referenced person. I told her as much in a March 16, 2000 phone conversation when she called me at the courthouse. Steve McKinney of Galloway, Chandler & McKinney Insurance was put

---

[3]The exact dates of mailing and receipt are not known.

5

> on notice by me on that date, but to this date there has been no follow up by Ms. Williams or any medical bills presented.

¶13. We find that the written notice, along with conversations with the Board members and the Chancery Clerk, was sufficient to put Clay County on notice of the injury since it assumes the recipient, the chancery clerk, had knowledge of the incident. The Court of Appeals has interpreted the Act to require that all notice of claims be received at the same time: "Diffused, even somewhat confused notice staggered over months of contacts does not provide the certain notice required under the statute." *Soileau v. Miss. Coast Coliseum Comm'n*, 730 So. 2d 101, 104 (Miss. Ct. App. 1998). The *Soileau* court also held that "[c]ompliance with the obligation to deliver or send by registered mail the notice of claim is not shown by proof that the chief executive officer learned of the claim through other means." *Id*. at 105. *See also* **Holmes v. Defer**, 722 So. 2d 624, 628 (Miss. 1998) (requiring strict compliance and holding that actual knowledge is irrelevant).

¶14. However, *Soileau* and *Holmes* were decided while we required strict compliance with the statute. Their precedential effect on this issue is limited as their analysis was based on a strict interpretation of the Act.[4]

---

[4] Since this Court adopted the substantial compliance requirement, we have found substantial compliance in **Williams v. Toliver**, 759 So. 2d 1195 (Miss. 2000) (plaintiff placed wrong name under "the name of a person known to be involved."); **Powell v. City of Pascagoula**, 752 So. 2d 999 (Miss. 1999) (original notice letter contained all statutorily required information except plaintiff's residence address); **Alexander v. Miss. Gaming Comm'n**, 735 So. 2d 360 (Miss. 1999) (all the information required for a statutory notice of claim, except for information regarding the extent of the injury); **Carr**, 733 So. 2d 261 (all requirements of notice provision given except the amount of damages sought, and the

¶15.     In a case similar to the case sub judice, the Court of Appeals found substantial compliance with the notice requirements of the Act where a governmental official knew of the claim and the claimant had been dealing directly with the liability insurance carrier. In *Overstreet v. George County School Dist*., 741 So.2d 965 (Miss. Ct. App. 1999), Overstreet was injured when she was struck by a school bus on September 27, 1995. She dealt directly with the school district's insurance company concerning her property damage claim. *Id*. at 966. She also retained an attorney for assistance with her personal injury claims. On January 4, 1996, her attorney sent notice via U. S. Mail to Shows, the superintendent of the school district. A complaint was filed on June 6, 1996. On July 2, 1997, The school district filed a motion to dismiss based on Overstreet's failure to comply strictly with the notice requirements of the Act. Shows claimed that he never received or saw the January 4 notice prior to July, 1997. In deposition testimony, Shows stated that he received notice of Overstreet's accident the day it occurred and also knew that Overstreet was making a property and personal injury claim which would be handled by the school district's insurance company. *Id*. The circuit court concluded that Overstreet did not comply with the Act's notice requirements because the notice was not delivered in person or by certified mail and the letter did not contain all of the information required by the Act. *Id*. at 967.

¶16.     In applying the substantial compliance requirement of the Act, the Court of Appeals found that even though Shows had not seen the notice of claim letter, he had knowledge of

---

plaintiff's injuries were described generally).

7

Overstreet's claims. *Id*. at 970. "Shows knew that Overstreet had made a property damage claim for the damages to her vehicle and was aware that there was a question as to her personal injury claims." *Id*.

¶17.    In the present case, Robinson, the chancery clerk, knew immediately of Williams's accident; he helped her clean her wounds. He also knew of her medical claims on March 16, 2000, which he referenced in his letter to Williams's attorney. As in *Overstreet,* notice was properly given applying the substantial compliance requirement.

*(a) Effects of the Tolling Provisions*:

¶18.    Clay County argues that even if notice was sufficient, she is still barred by the statute of limitations. The Act, in pertinent part, provides:

> (3) All actions brought under the provisions of this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after; provided, however, that the filing of a notice of claim as required by subsection (1) of this section shall serve to toll the statute of limitations for a period of ninety-five (95) days from the date the chief executive officer of the state agency receives the notice of claim, or for one hundred twenty (120) days from the date the chief executive officer or other statutorily designated official of a municipality, county or other political subdivision receives the notice of claim, during which time no action may be maintained by the claimant unless the claimant has received a notice of denial of claim. After the tolling period has expired, the claimant shall then have an additional ninety (90) days to file any action against the governmental entity served with proper claim notice. However, should the governmental entity deny any such claim, then the additional ninety (90) days during which the claimant may file an action shall begin to run upon the claimant's receipt of notice of denial of claim from the governmental entity.

8

Miss. Code Ann. § 11-46-11(3) (2001).

¶19.    Clay County argues that Williams had one year from the date of her injury, November 1, 1999, to bring her claim.  After the 120-day tolling period expired, Williams had an additional 90 days to file an action.  Clay County asserts that after the additional 90 days, Williams's claim was barred even if it was within the one year time period of the statute of limitations. We do not agree.

¶20.    In *Marshall v. Warren County Bd. of Supervisors*, 831 So.2d 1211 (Miss. Ct. App. 2002),  the cause of action accrued on July 31, 1999.  Warren County received notice on March 6, 2000.  A complaint was filed on November 2, 2000.  The circuit judge used Clay County's interpretation of the statute of limitations and reasoned that the tolling provision began on March 6, 2000, and ended on July 4, 2000.  After the tolling period, Marshall had 90 additional days to file her complaint, which was barred after October 2, 2000.  The Court of Appeals affirmed the circuit court's decision, but not its interpretation of the Act, stating "there is nothing to indicate that the Legislature intended to shorten the time frame for filing suit which was provided in previous versions of [the Act] . . . ."  The *Marshall* court examined our opinion in *Roberts v. New Albany Separate School District*, 813 So.2d 729 (Miss. 2002), and determined that *Roberts* was distinguishable because the *Roberts* claimant

> gave notice of her claim some five days before the one-year statute of limitations expired.  Therefore, the court found that when calculating the time of the tolling provision, she received the benefit of the 'full measure of the 120 day  period.'  In this case, Marshall filed her notice of claim nearly four months prior the expiration of the one year statute of limitations.

Consequently, the 120-day tolling period expired during the one year time period. Keeping in mind that in amending Mississippi Code Annotated Section 11-46-11 (Supp. 1998), the Legislature did not shorten the one year statute of limitations, we hold that the amended statute, 2002 Miss. Laws Chapter 380 (Senate Bill 3052), requires that a plaintiff received, at a minimum, ninety days to file his action following the running of the one year statue of limitations.

Marshall did not file her action until ninety-four days after the one year statute of limitations had run. The amendment to the statute requires, "[a]fter the tolling period has expired, the claimant shall then have an additional ninety (90) days to file any action against the governmental entity served with proper claim notice." 2002 Miss. Laws. Ch. 380 (S.B. 3052). Giving the statue plain meaning, we must find that Marshall's action is time-barred.

*Marshall*, 831 So.2d at 1213.

¶21. In *Roberts*, we stated that the claimant was not barred by the statute of limitations when she brought suit. Roberts was injured on August 8, 1998, gave a notice of claim on August 3, 1999, and filed suit on December 6, 1999. The complaint was dismissed as untimely. On appeal, we reversed and remanded, stating that she gave notice of her claim within the one-year statute of limitations, which tolled the statute of limitations for 120 days. She was then given a 90-day period to file the suit, which she filed within. It is clear that *Marshall* and *Roberts* do not allow for Clay County's interpretation of the Act.

¶22. Williams interprets the statute of limitations as tolling for 120 days then resuming the counting of the one-year statute of limitations, thus giving her 485 days to file her suit from the time of her injury. She argues that once notice was given on November 15, 1999, the statute stopped running for 120 days, then resumed, barring all claims after February 28, 2001.

Through this interpretation, it is arguable that a claimant has an additional 90 days after the 120 day tolling period if the governmental entity does not deny the claim within the 120 day tolling period. The result would be that a claimant has one year plus two hundred and ten days to file his or her action, or 575 days. We disagree because:

> [a]ny suggestion that a claimant has one year plus 95 (or 120) days plus 90 days must overcome both the natural reading of the overall statute and the specific interpretation barrier that "the additional ninety (90) days during which the claimant may file an action shall begin to run upon the claimant's receipt of notice of denial of claim from the governmental entity.

*Burge v. Richton Mun. Separate Sch. Dist.*, 797 So. 2d 1062, 1068 (Miss. Ct. App. 2001) (Southwick, P.J., concurring).

¶23. *Marshall*'s interpretation of *Roberts* is correct. In *Roberts*, the plaintiff was given the full 120-day tolling period because notice was given within the final 120 days of the limitation period, whereas Marshall gave notice outside the final 120-day period of the limitations period. In *Moore v. Memorial Hospital of Gulfport*, 825 So. 2d 658, 666-67 (Miss. 2002), we stated that Moore's complaint was timely. The cause of action accrued on August 31, 1998. Suit was filed on December 31, 1998, and was voluntarily dismissed on May 20, 1999. Moore gave statutory notice on June 9, 1999, which was within the last 120 days of the statute of limitations. Moore then had 120 days from the date of the notice to file her complaint.

¶24. Here, the accident occurred on November 1, 1999, and notice was given on November 15, 1999. The 120-day tolling period expired within the one-year statute of limitations. Williams was then entitled to a minimum of 90 days to file an action after the 120-day tolling

11

period, which also expired before the one-year statute of limitations.  When  November 1, 2000, passed, so did the time for filing Williams's action.[5]

## II.  WHETHER WILLIAMS SUFFERED A LATENT INJURY WHICH WOULD TOLL THE STATUTE OF LIMITATIONS.

¶25.  Williams argues that she did not know the extent of her injury or that it would require surgery until March 2000, thereby extending the statute of limitations to March 2001.  Thus, Williams's second notice of claim filed on February 2, 2001, was timely. This Court has held that the discovery rule applies to Tort Claims Act actions involving latent injuries.  *Barnes v. Singing River Hosp. Sys.*, 733 So.2d 199, 204 (Miss. 1999).

¶26.  We defined the date of accrual of a personal injury action relative to the type of injury sustained in a case applying the Federal Employers' Liability Act's three-year statute of limitations:

> In cases involving traumatic injury, when the symptoms are immediately manifested so that the employee is aware of the event causing the injury, the cause of action accrues upon the occurrence of the injury, regardless of whether the full extent of the disability is known at the time.  By the same token, with

---

[5] For purposes of this discussion we apply the 120-day provision since the present case concerns a county.  We do not suggest that the statute of limitations is less than one year.  The tolling provision allows the claimant up to an additional 120 days to bring suit if notice is given within the final 120 days of the one year limitation period.  A claimant has, at a minimum, one year to bring suit.  If a claimant files notice 30 days after the injury, and the government denies the claim 30 days later, the claimant still has one year from the date of the injury to bring suit. If a claimant files notice eleven months and twenty-nine days from the date of the injury, the statute is tolled for 120 days from that notice.  After the 120-day period, the claimant has 90 days to bring suit.  Should the government respond within the 120-day period, the claimant has 90 days to bring suit from the date of response.

12

industrial diseases, where the symptoms are not immediately manifested, the cause of action does not accrue until the employee is aware or should be aware of his condition.

*Ill. Cent. Gulf R.R. v. Boardman*, 431 So. 2d 1126, 1128 (Miss. 1983) (quoting *Fletcher v. Union Pac. R.R.*, 621 F.2d 902 (8th Cir. 1980)). We applied this very same definition in *Robinson v. Singing River Hosp. Sys.*, 732 So. 2d 204, 208 (Miss. 1999), a case arising under the Mississippi Tort Claims Act wherein the plaintiff sustained burns to his calves from hot packs, because the plaintiff knew he was injured when the hot packs were applied. Here, Williams knew she was injured when she fell down the stairs. She may not have known the "full extent of the disability" when she fell, but she did know she was injured. Her injuries were not comparable to a delayed onset industrial disease. The cause of action accrued on November 1, 1999, the date of the fall.

### III. WHETHER CLAY COUNTY IS EQUITABLY ESTOPPED FROM ASSERTING THE STATUTE OF LIMITATIONS.

¶27. Williams argues that Clay County should be equitably estopped from asserting a statute of limitations defense. Equitable estoppel can be asserted to a statute of limitations defense to avoid a serious injustice if there is inequitable conduct. *Trosclair v. Miss. Dep't of Transp.*, 757 So. 2d 178, 181 (Miss. 2000). "Estoppel is action or nonaction that induces another's reliance thereon, either in the form of action or nonaction, to his or her detriment." *Carr*, 733 So.2d at 265 (quoting *Fritsch v. St. Croix Cent. Sch. Dist.*, 515 N.W.2d 328 (Wis. Ct. App. 1994)). For equitable estoppel to apply, there must be a representation by a party,

13

reliance by the other party, and a change in position by the relying party. *Carr*, 733 So. 2d at 265. Governmental entities are not immune from equitable estoppel. *Id*.

¶28.    We did not apply equitable estoppel to prevent the State from asserting a statute of limitations defense when the State was diligent in working with the claimant and made attempts to settle the claim. *Miss. Dep't of Pub. Safety v. Stringer*, 748 So.2d 662, 665 (Miss. 1999). Stringer was in constant contact with the Department of Public Safety after his accident. *Id*. at 664.  He was paid for his property damage, but rejected two offers to settle his other claims. *Id*.  Stringer filed his complaint two years after the accident.  *Id*.  Addressing his equitable estoppel argument, we stated, "[a]dditionally, while inequitable or fraudulent conduct does not have to be established to estop an assertion of an inadequate notice of claim defense, inequitable or fraudulent conduct *must* be established to estop a party from asserting a statute of limitations defense."  *Id*. at 665.  We also stated that equitable estoppel should not be applied liberally:

> Although under certain circumstances a defendant's actions may be such that estop that defendant from claiming the protection of a statute of limitations, we do not agree that equitable estoppel should be applied so liberally as to allow a plaintiff to assert estoppel where no inequitable behavior is present. Statutes of limitations are well established in our judicial system. We have stated their purpose before as follows:
>
>> The primary purpose of statutory time limitations is to compel the exercise of a right of action within a reasonable time. These statutes are founded upon the general experience of society that valid claims will be promptly pursued and not allowed to remain neglected. They are designed to suppress assertion of false and stale claims, when evidence has been lost, memories

14

have faded, witnesses are unavailable, or facts are incapable of production because of the lapse of time.

Accordingly, the fact that a barred claim is a just one or has the sanction of a moral obligation does not exempt it from the limitation period. These statutes of repose apply with full force to all claims and courts cannot refuse to give the statute effect merely because it seems to operate harshly in a given case. The establishment of these time boundaries is a legislative prerogative. That body has the right to fix reasonable periods within which an action shall be brought and, within its sound discretion, determine the limitation period. . . .

Deficiencies, if such there should be, in statutes of limitation should be remedied by the legislature. It should not be the province or function of this court to intrude upon an area peculiarly within the channel of legislative action. . . .

*Stringer*, 748 So.2d at 665-66 (quoting *Smith v. Sneed*, 638 So. 2d 1252, 1263 (Miss. 1994) (Hawkins, C.J., dissenting)). We found there was no allegation or evidence the State misled or caused Stringer to believe he did not need to comply with the notice provision or statute of limitations. *Id*. at 667

¶29.   Here, Robinson, the chancery clerk, told Williams that Clay County would pay for any valid medical claims.  In his letter to Waide, Robinson admitted he told Williams this on March 16, 2000, but he also stated that she never presented any bills or medical claims as of that date, February 13, 2001.  Robinson's conduct did not rise to the level of inequity or fraud. He told Williams that Clay County would pay a valid claim, yet Williams never presented any bills or anything indicating her expenses.   Instead of bringing forth her medical bills so the county could review or pay them, she brought suit nearly fifteen months after her accident.  As

15

in *Stringer*, there is no allegation or evidence that Robinson misled or caused Williams to believe that she did not have to comply with the statute.[6]

¶30.    This claim is without merit.

## CONCLUSION

¶31.    We find that Williams substantially complied with the notice requirement of the statute, but her lawsuit was still filed outside of the statute of limitations.  We also find that Robinson's actions did not rise to the level of fraud or inequity which would estop the County from asserting a statute of limitations defense.  We therefore affirm the Clay County Circuit Court's dismissal of Williams' complaint as untimely filed.

¶32.    **AFFIRMED.**

**SMITH, P.J., EASLEY AND CARLSON, JJ., CONCUR.  GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.  McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.  COBB, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, C.J.  DIAZ, J., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶33.    Since the circuit court erred in dismissing this action as untimely, I dissent and would reverse and remand.  Therefore, as a dissent to the plurality, I adopt the majority opinion originally drafted by Justice Diaz.

---

[6] We note that in *Carr*, 733 So. 2d 261, and *Ferrer v. Jackson County Bd. of Supervisors*, 741 So. 2d 216 (Miss. 1999), we found the defendants estopped from raising a notice of claim defense under the Act.  We are dealing with a statute of limitations defense in the case sub judice.

16

¶34.    The general issue presented by this appeal is whether the circuit court properly granted Appellee Clay County's Motion to Dismiss.   At the heart of the matter, however, lie challenging issues heretofore undecided by this Court; namely, the amount of claim notice required to toll the statute of limitations (SOL) under the Mississippi Tort Claims Act (MTCA), and, once tolled, the effect of the 1999 amendments to the MTCA on the tolling period.

¶35.    Appellant, Shirley Williams (Williams), sued Clay County for injuries she sustained after falling down stairs at its courthouse. The trial court, finding that Williams failed to give proper notice within the statutory time period, dismissed the complaint as time barred by the statute of limitations (SOL).  Williams alleges that she substantially complied with the notice requirements of the Mississippi Tort Claims Act; that she suffered a latent injury which tolled the SOL until the injury was discovered; and that Clay County should now be estopped from breaking its promise to pay her medical expenses.  She argues that these allegations, taken as true, state a cause of action; thus, preliminary dismissal was improper.  We agree with Williams and reverse and remand.

¶36.    On the afternoon of November 1, 1999, as Williams was leaving the Clay County courthouse, the heel of her shoe got caught in a hole in the concrete by the door of the exit. She fell down the stairs, tearing her pantsuit and injuring her leg.  At Williams' request, Chancery Clerk Ronnie Robinson (Robinson) was summoned.  Robinson helped Williams attend to her injury. According to Williams, she asked Robinson if she should see a doctor,

17

to which he responded, "Well, you know a fall sometimes just makes you sore and stiff for a couple of weeks." Williams went home and did not immediately see a doctor.

¶37.  A few weeks later, around the middle of November 1999, Williams sent a letter to Robinson, reminding him of her fall and requesting reimbursement for the cost of her torn pantsuit. Robinson forthwith sent Williams a check. However, Williams did not cash the check because it contained the phrase "final settlement." Williams alleges that the check expressly stated that cashing the instrument would relieve Clay County from further liability. Because as she puts it, "[t]he amount of the check was nowhere near the amount of her injuries," Williams threw the instrument away. No further action was taken by either party at this time.

¶38.  Williams' injury did not improve and in early 2000 she began seeing a doctor. In March 2000, Williams set up an appointment with Robinson and the Supervisors of Clay County. By this time she had realized that her injury was more serious than she initially thought and would possibly require surgery or other action. On March 16, 2000, the day of the meeting, Williams was informed that she would not be able to meet with the entire Board of Supervisors. Instead, Shelton Dean, President of the Board, and Supervisor Darrel Myers met with her. They told Williams they did not know she had been hurt. She told them about her injury and that her doctor told her she would probably have to see a specialist. According to Williams, in response to her explanation of her injury and her request to see an orthopedic surgeon, someone at the meeting told her, sarcastically, "Well, no, I think you need to see an eye doctor."

18

¶39. Later that same day, Williams phoned Robinson. He told her that the county has always been willing to pay any and all valid medical claims she had. He further told her that he put his insurance company on notice that they might be subject to medical claims by Williams. Robinson confirmed the substance of this telephone conversation in a February 13, 2001, letter to Williams' attorney, Jim Waide (Waide).

¶40. Eventually, Williams did have extensive surgery on her knee to repair the damage caused by the fall. On January 31, 2001, she filed her complaint in the Clay County Circuit Court alleging negligence, inter alia, for allowing the hole to exist at the top of the courthouse stairs. She sought damages for lost income, medical bills, pain and suffering, and compensation for the clothing that was ruined in the fall.

¶41. On March 25, 2001, Clay County filed a Motion to Dismiss claiming that Williams' pre-suit notice did not meet the required format and/or timing of the Tort Claims Act and did not toll the statute of limitations. They argued that, since the accident occurred on November 1, 1999, and the complaint was not filed until January 31, 2001, the one-year statute of limitations had expired. The trial judge granted Clay County's motion. Aggrieved by this decision, Williams appeals, citing the following three issues, edited for clarity, for resolution by this Court:

> **I. WHETHER WILLIAMS SUBSTANTIALLY COMPLIED WITH THE NOTICE REQUIREMENT OF THE MISSISSIPPI TORT CLAIMS ACT?**
> (a) Effect of the Act's Tolling Provisions
> **II. WHETHER WILLIAMS SUFFERED A LATENT INJURY THAT EFFECTIVELY TOLLED THE STATUTE OF LIMITATIONS?**

19

**III.** **WHETHER CLAY COUNTY SHOULD BE EQUITABLY ESTOPPED FROM ASSERTING THAT THE STATUTE OF LIMITATIONS HAS RUN BECAUSE THEY PROMISED WILLIAMS THEY WOULD PAY HER MEDICAL BILLS?**

¶42. A motion to dismiss under M.R.C.P.12(b)(6) raises an issue of law. *Arnona v. Smith*, 749 So.2d 63, 65 (Miss. 1999) (citing *Tucker v. Hinds County*, 558 So.2d 869 (Miss. 1990)). Consequently, this Court reviews such motions *de novo*. *Id.* (citing *UHS- Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc.*, 525 So.2d 746, 754 (Miss. 1987)). When considering a motion to dismiss, the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim. *Id.* Further, this Court stated in *Weeks v. Thomas*, 662 So.2d 581 (Miss.1995), that in order to survive a Rule 12(b)(6) motion, the complaint need only state a set of facts that will allow the plaintiff "some relief in court." *Id.* at 583. Additionally, "[t]he Supreme Court reviews errors of law, which include the proper application of the Mississippi Tort Claims Act, *de novo*." *Fairley v. George County*, 800 So. 2d 1159, 1162 (Miss. 2001).

As such, we sit in the same position as did the trial court. **I.** **WHETHER WILLIAMS SUBSTANTIALLY COMPLIED WITH THE NOTICE REQUIREMENT OF THE MISSISSIPPI TORT CLAIMS ACT?**

¶43. The Mississippi Tort Claims Act, § 11-46-1 (the Act) diminished the sovereign immunity protection available for our state government. The Act allows a plaintiff to sue a governmental entity, provided the action is brought within one year of the injury (discovery

20

rule applies[7]) and proper notice of the claim is given to the governmental entity. *See* § 11-46-

11. The Act lists the specific elements of a proper notice, as follows:

> 2) Every notice of claim required by subsection (1) of this section shall be in writing, and shall be delivered in person or by registered or certified United States mail. Every notice of claim shall contain a short and plain statement of the facts upon which the claim is based, including the circumstances which brought about the injury, the extent of the injury, the time and place the injury occurred, the names of all persons known to be involved, the amount of money damages sought and the residence of the person making the claim at the time of the injury and at the time of filing the notice.

Miss. Code Ann. §§ 11-46-11(2) (Supp. 2001). Prior to 1998, this Court required strict compliance with the Act's detailed notice requirements. *See Holmes v. Defer*, 722 So. 2d 624 (Miss. 1998); *City of Jackson v. Lumpkin*, 697 So. 2d 1179 (Miss. 1997); *Carpenter v. Dawson*, 701 So. 2d 806 (Miss. 1977). However, in December 1998, this Court handed down *Reaves ex rel. Rouse v. Randall*, 729 So. 2d 1237 (Miss. 1998). In *Reaves,* the Court announced a substantial compliance test for determining whether proper claim notice had been given. The Court stated:

> The Mississippi Tort Claims Act stands in contrast to the old common law principle of sovereign immunity where an injured party was barred from recovery against a political subdivision. The Act was adopted to reduce the harsh effect of the common law. We have held that statutes such as this should be read reasonably.

729 So. 2d at 1240. The Court continued: "In order to carry out the legislative purpose of providing relief to injured citizens, we hold that substantial compliance with the notice provisions of the Act is sufficient." *Id.* This position was reaffirmed in *Carr v. Town of*

---

[7]*Barnes v. Singing River Hosp. Sys.*, 733 So. 2d 199, 205 (Miss. 1999).

21

*Shubuta,* 733 So. 2d 261 (Miss. 1999), which specifically overruled *Lumpkin, Carpenter,* and *Defer* to the extent they were in conflict. *Id.*, at 263.

¶44.     Section 11-46-11(1) was amended by the Mississippi Legislature on March 15, 1999 in response to the *Reaves* and *Carr* decisions. That amendment expanded the number of officials allowed to receive notice of claim under section 11-46-11(1) to include, inter alia, the county chancery clerk if the entity sued is a county. Prior to the 1999 amendments, filing the notice tolled the SOL for 95 days, and the action was timely so long as the complaint was filed no later than one year and 95 days after it arose. Miss. Code Ann. § 11-46-11 (Supp. 1998). *See also State v. Dampeer*, 744 So. 2d 754 (¶ 8) (Miss. 1999). The amended statute, however, provides for a 120 day tolling period upon notice of claim, followed by an additional 90 day grace period for a claimant to file suit.[8] Miss. Code Ann. § 11-46-11 (Supp. 2001).

¶45.     Williams has alleged that she gave notice of her claim to both the chancery clerk and to two members of the Board of Supervisors. If this is true (and on a 12(b) (6) dismissal we must assume that it is), notice was given to the proper party under the Act. Thus, resolution of this issue depends upon whether Williams' actions constituted substantial compliance with the Act's notice requirements, or whether, as Clay County asserts, they failed in that regard, and *a fortiori* the action is barred by the one-year SOL.[9]

---

[8]The effect of the new tolling period is discussed below.

[9]Clay County concedes on appeal that a notice of claim is sufficient so long as it substantially complies with the statutory requirement. However, it contends that regardless of what standard the Court applies, the notice did not "substantially" comply.

¶46.    "Notice provisions encourage settlement of claims prior to entering litigation, therefore conserving valuable governmental resources. Further, notice to the governmental entity encourages corrective actions, where necessary, prior to litigation, therefore benefitting public health and welfare." *Vortice v. Fordice*, 711 So.2d 894, 896 (Miss. 1998). "The purpose of the Act is to insure that governmental boards, commissioners, and agencies are informed of claims against them." *Reaves*, 729 So.2d at 1240. As will be shown, Clay County was adequately informed of Williams' claim against it.

¶47.    Williams points to Robinson's assistance to her after her fall, the November 1999 letter she wrote Robinson reminding him of the fall and requesting reimbursement for her torn pantsuit, the March 16, 2000 meeting with two supervisors, and the subsequent promise by the County, through Robinson, to pay her medical bills.[10] She argues that these events constituted substantial compliance with the notice requirement, and thus, effectively tolled the SOL. She argues that these allegations, taken as true, preclude a 12 (b)(6) dismissal on statute of limitations grounds, as her claim would not have been time barred until March 1, 2001.[11]

¶48.    In *Carr*, we stressed that the determination of substantial compliance is a legal as well as fact sensitive inquiry which must be decided on a case-by-case basis. *Carr v. Town of Shubuta*, 733 So.2d 261, 265 (Miss. 1999). In *Powell v. City of Pascagoula*, 752 So.2d 999

---

[10]Williams also filed a second notice of claim on February 2, 2001.

[11]This date is arrived at by adding the one-year statute of limitations to the November 1, 1999, injury, and then adding the 120 day tolling period to that date. Williams' complaint was filed on January 31, 2001.

(Miss. 1999), we held that a notice substantially complied with the Act even though it failed to include the claimant's address. Remarking on the claimant's good faith attempt to notify the city of her claim, we stated

> This Court has found substantial compliance in *Alexander v. Mississippi Gaming Comm'n*, 735 So.2d 360 (Miss.1999); and *Ferrer v. Jackson County Bd. Of Supervisors*, 741 So.2d 216 (Miss.1999), as well as several others more recent, where it appeared that a good faith effort had been made to provide the information to which they had access, and which they believed was required and to notify the party whom they reasonably believed was responsible for acceptance of the notice.

*Id.* at 1005.

¶49. Williams made a reasonable, good faith effort to provide Clay County with all the information available to her regarding her injuries. Immediately after the accident she personally requested to speak with the chancery clerk, who, after helping to clean her wounds, told her that her injury was not severe enough to seek medical attention. Williams later sent a letter to the same clerk which complied with § 11- 46-11(2) in every way, save the extent of her injury and the exact amount of money damages sought. However, these minor discrepancies are not fatal to her claim.

¶50. This Court has held that "the scheme of substantial compliance adopted by this Court in *Reaves* and *Carr* does not require that a plaintiff substantially comply with each informational notice requirement set forth in the Tort Claims Act." *Thornburg v. Magnolia Reg'l Health Ctr.*, 741 So.2d 220, 222 (Miss. 1999). In *Carr*, the Court held that the plaintiff's failure to include the amount of damages in her notice of claim as is required by

section 11-46-11(2) was not detrimental to her claim under a substantial compliance standard. 733 So. 2d at 265-66.

¶51. In *Thornburg*, the claimant's notice of claim failed to provide his address. This Court held that the health center could have easily have found the claimant's address on its own. *Id.* at 223. In effect, the Court imputed a duty upon the government entity to find whatever information is missing from a notice of claim it receives from claimants that are suing the entity. *Id.*

¶52. In the case at bar, the record is silent as to whether Williams provided either Robinson or the supervisors the name of her doctors or the location where she was being treated. However, she has alleged that she told Clay County that her injury was severe and that it would require surgery; under *Thornburg*, Clay County may have had a duty to discover the specifics for itself. The record does not reveal whether Clay County did any investigating at all after learning of the true nature of Williams' injury. Through discovery they could find out this relevant information. Considering that the purpose of the notice requirement is to give the government entity a chance to investigate the claim, the case should be remanded for development.

¶53. That the failure to include the exact amount of damages sought is not fatal to a claim is especially true where, as here, the extent of the injury and/or the amount of money damages sought is not known at the time notice is given. Once the extent of her injury was discovered, Williams met with two members of the board of supervisors and provided them this

25

information.  Later that same day, in a telephone conversation, she gave Robinson the same information and he told her that the County would pay her medical bills.

¶54.    Admittedly, the November 1999 letter fails to clearly state that Williams plans to seek reimbursement from the County for her personal injury; however, she has alleged that at the time she wrote the letter the extent of her injuries were unknown.  Had this letter been the only form of notice given by Williams her personal injury claims may in fact be barred.  However, as mentioned, this initial notice was supplemented in March 2000 through Williams meeting with two supervisors and her subsequent conversation with Robinson.  Williams has alleged that she informed both the supervisors and Robinson on that date that she had been referred to a specialist and would probably require corrective surgery.

¶55.    Additionally, Robinson corresponded with Williams' counsel, Jim Waide, in a letter dated February 13, 2001.  In that letter, Robinson wrote that he informed Williams on March 16, 2000, that the County "has always been willing to pay any and all valid medical claims . . . ."  He also wrote that on that same date he put the County's insurer on notice that it might be subject a claim from Williams.  Robinson suggested that Waide get Williams to call the County's insurance agent regarding any medical bills.  This is the first time in the record where this Court has found anything establishing that Williams was told the identity of the County's insurance carrier or that she was supposed to provide him (or the County) with her medical bills.

¶56.    Clay County asserts that settlement offers are not admissible.  Thus, it argues that the February 13, 2001, letter from Robinson to Waide should not be considered.  Alternatively,

it argues that this letter is dated after the expiration of the SOL so it cannot constitute equitable tolling. *See also* **Miss. Dep't of Pub. Safety v. Stringer**, 748 So. 2d 662, 667 (Miss. 1999) (holding that good faith settlement negotiations alone are not sufficient to toll the statute of limitations). This argument overlooks several things. First, settlement offers and other things not admissible at trial are admissible and can be considered by a trial judge at a preliminary stage such as this. Miss. R. Evid. 104 (a). Second, the letter was merely a written confirmation of the March 16, 2000, conversation between Williams and Robinson wherein he told her that the County would pay her valid medical bills. Thus, that the letter was written after the expiration of the SOL is irrelevant. The letter itself is only relevant insofar as it proves that the County had agreed, prior to the expiration of the SOL, that it would pay Williams' medical bills. Third, the letter is more than a settlement offer, it is further proof that the County was notified by Williams on March 16, 2000, that she had realized that her damages were more significant than she and Robinson had originally thought. It put the County on notice that Williams has a claim for personal injury as well as one for damage to her property.

¶57.    We conclude that the trial judge failed to give appropriate consideration to the meeting Williams had with the two supervisors in March 2000. This meeting, coupled with Williams' subsequent conversation with Robinson and their two previous communications (immediately after the fall and in the November 1999 letter), were more than sufficient to notify Clay County that Williams had been injured.

27

¶58. This question of the sufficiency of staggered and informal notice was considered by the Court of Appeals in *Soileau v. Mississippi Coast Coliseum Comm'n*, 730 So.2d 101 (Miss. Ct. App.1998). That court interpreted the Act to require that all notice of claim be received at the same time. The court stated:

> Even if a claimant could comply with the Act by submitting several documents that when joined comprise a single "notice of claim," we do not find that the documents can be delivered over a several month period during prelitigation communications. The notice is the announcement that suit is imminent if agreement is not reached. Diffused, even somewhat confused notice staggered over months of contacts does not provide the certain notice required under the statute.

*Id.* at 104. *Soileau* also held that "[c]ompliance with the obligation to deliver or send by registered mail the notice of claim is not shown by proof that the chief executive officer learned of the claim through other means." *Id.* at 105. *See also Holmes v. Defer*, 722 So.2d at 628 (requiring strict compliance and holding that actual knowledge is irrelevant). However, *Soileau* and *Holmes* were decided prior to *Reaves* and *Carr*, and prior to the 1999 amendments to § 11-46-11. Their precedential effect, then, is limited, as their analysis was based on a strict interpretation of the Act, rather than one focusing on whether the claimant's notice substantially complied with the Act.

¶59. In *Reaves* this Court held that "[s]tatutes such as this should be read reasonably." *Reaves,* 729 So.2d at 1240. The Court continued, "[t]he purpose of the Act is to insure that governmental boards, commissioners, and agencies are informed of claims against them." *Id.* Since that holding, this Court has been increasingly lenient in the amount of claim notice it

28

requires to satisfy the Act. The determinative facts appears to have become whether the governmental agency is notified in fact of the potential of a claim against it.

¶60.    In *Ferrer v. Jackson County Board of Supervisors*, 741 So. 2d 216 (Miss. 1999), this Court found substantial compliance when no notice of claim was sent at all based on extensive settlement negotiations between the two parties' lawyers (and the County's insurance provider) before the complaint was filed. *Id.* at 219. Both parties to the present appeal agree that Clay County sent a settlement check to Williams in November 1999 and that the County, through Robinson, had agreed to pay her medical bills. Williams has alleged that the supervisors told her in March 2000 that they would meet to discuss her claim. These events can be construed as settlement negotiations.

¶61.    In *Smith County School District v. McNeil*, 743 So. 2d 376 (Miss. 1999), the Court even hinted that three letters sent to a governmental entity's insurance carrier may constitute substantial compliance with the notice provisions of section 11- 46-11(1). *Id.* at 378-79. As mentioned, in March 2000, after Williams' meeting with him and the supervisors, Robinson put Clay County's insurer on notice of the claim.

¶62.    In *Powell v. City of Pascagoula*, 752 So.2d 999 (Miss. 1999), this Court found substantial compliance despite minor deficiencies in the notice of claim. The Court found that the claimant made a reasonable, good faith effort to comply with the Act's requirements. Because the city received actual notice of her claim and suffered no actual prejudice as a result of the deficiency, this Court found that summary dismissal was improper. *Id.* at 1004-05.

Similarly, in the case at bar, Clay County received actual notice of Williams' injury on several different occasions prior to the expiration of the SOL. She told the county's statutory agent (Robinson) about the injury when it happened, she later followed up with a letter to that same agent, and when the extent of her injury was known she met with and informed Clay County through two supervisors. After she was insulted and her accident belittled, Williams sought counsel, who brought suit and filed formal notice.[12] Williams' good faith efforts to inform Clay County of her injuries were sufficient to toll the SOL.

¶63.    In *Chamberlin v. City of Hernando*, 716 So.2d 596 (Miss. 1998), the plaintiff alleged that a letter addressed to the mayor of the City of Hernando served as the ninety (90) days' notice and tolled the statute for ninety-five (95) days. However, this Court found the notice insufficient because

> there [was] no adequate proof contained within the designated record as to whether the letter was ever actually mailed to the mayor. There [was] no affidavit in regard to the alleged letter and only appellants' counsel's argument opposing the motion to dismiss ever mentions such a letter. Appellees at the same time [made] the argument that such a letter was never received.

716 So. 2d at 601. Conversely, in the case at bar, substantial proof established that Williams sent Robinson a letter that discussed her claim and that he in fact received it. Clay County has admitted as much.

---

[12]This description of the events preceding Williams' suit refer to her allegations that a Clay County official told her that she should get her eyesight checked. On a 12 (b) (6) dismissal, such as this, these allegations must be taken as true.

¶64.    The trial judge found that Williams' claim , "*fails to meet the statutory requirements*

*of pre-suit notice* on any claim *except possibly the paid for pantsuit* and so no tolling of any

statute of limitations occurred and all other claims are barred.  See*Carpenter v. Dawson*, 701

So. 2d 806 (Miss. 1997)." (emphasis added).[13]  Williams argues that, because he cites it in his

order, the trial judge must be unaware that **Carpenter** was overruled by **Reaves** and **Carr**.

However, **Carpenter** was only overruled insofar as it required strict compliance.  All other

aspects of it remain good law.  Moreover, Williams' brief in opposition to Clay County's

motion to dismiss makes it clear that this Court only requires substantial compliance.

Assuming the trial judge read the brief, Williams' argument on this point is specious.

¶65.    Nonetheless, it is not clear from his order whether the trial judge used a strict or a

substantial compliance test.  The trial judge's emphasis on Williams' failure to meet the

statutory requirements of pre-suit notice indicates that he might have been basing his decision

on a strict, rather than a substantial compliance standard.  Remand is proper simply to ensure

that the trial judge applied the correct legal standard.

¶66.    We conclude, based upon the legislative purpose of the Act and the precedents of this

Court,[14] Williams' actions substantially complied with the Act's notice requirements.

---

[13]Williams argues that the trial judge, by stating that she possibly gave notice with regard to the torn pantsuit, effectively admits that she has stated a claim.  She argues that, pursuant to the standard by which the circuit court must evaluate a motion to dismiss, the trial judge should have assumed that the letter did satisfy the pre-suit notice.  We agree.

[14]"Admittedly, the act is intended to limit the government's liability for tortious conduct, just as the Workers' Compensation Act was intended to limit the exposure of Mississippi employers, but it is also intended to allow for the orderly administration of

31

Williams' November 1999 letter was in writing, it contained a short and plain statement of the facts upon which the claim was based; including the date and location of the injury, the circumstances that brought about the injury, and the extent of the injury.[15] The letter identifies the only parties privy to the facts of the accident, to-wit, Williams and Robinson; and it provides Williams' home address and telephone number. Though the letter did not give the exact time of the accident, this information was unnecessary as the letter was addressed to Robinson, who had personal knowledge of the accident.

¶67.    We conclude that the November 1999 letter served as sufficient notice, especially considering that it was supplemented by Williams' conversations with both Robinson and two members of the Board of Supervisors, one of whom happened to be the President of that Board. "The purpose of the Act is to insure that governmental boards, commissioners, and agencies are informed of claims against them." **Reaves**, 729 So.2d at 1240. Clay County cannot assert that it was not informed of Williams' claim.

¶68.    In *Overstreet v. George County School District*, 741 So. 2d 965 (Miss. Ct. App. 1999), the Court of Appeals held a notice sufficient although it did not have all the required information. The court found it instructive that a supervisor testified that he knew about the

_____

legitimate claims against governments for such tortious conduct, and like the workers' compensation act, serves as an exclusive remedy for such claims." **Carr**, 733 So. 2d at 263.

    [15]Though the letter does not describe the physical injuries Williams now claims, it does state that she appreciates the assistance Robinson gave her in "attempting to relieve [her] injuries", implying that she was physically hurt; and states that her pants were "also badly torn"; implying that the torn pantsuit was an injury/damage/claim in addition to her physical injuries.

accident almost immediately after it occurred, that the matter was referred to the district's insurer. The court also considered that, at the time the notice was provided, the claimant was continuing to receive medical care for her injuries and an exact amount of her claims for medical expenses could not be calculated. *Id.* at 971. Similarly, in the case at bar, Robinson was alerted immediately after the accident and he assisted Williams. The matter was referred to the county's insurer, and Williams was unaware of the exact nature of her damages when she first provided notice.

¶69.    Admittedly, a finding that Williams' substantially complied with the claim notice requirements requires this Court to broaden its leniency of the Act's requirements; however, this expansion to be the next logical step in the direction this Court has been heading since the *Reaves* decision. Also, it is in line with this Court's precedent, as outlined and discussed above. However, a question remains, to-wit: when and for how long the one-year SOL is tolled when a plaintiff gives a governmental entity notice of a pending claim prior to filing an action based on that claim?

*(a) Effect of the Act's Tolling Provisions:*

¶70.    Clay County submits, assuming arguendo, that Williams' notice was sufficient, the tolling provisions do not save her claim. Naturally, Williams' argument is contrary. The Act, in pertinent part, provides:

> (3) All actions brought under the provisions of this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after; provided, however, that the filing of a notice of claim as required by subsection (1) of this section shall serve to toll the statute of limitations for a

33

period of ninety-five (95) days from the date the chief executive officer of the state agency receives the notice of claim, or for one hundred twenty (120) days from the date the chief executive officer or other statutorily designated official of a municipality, county or other political subdivision receives the notice of claim, during which time no action may be maintained by the claimant unless the claimant has received a notice of denial of claim. After the tolling period has expired, the claimant shall then have an additional ninety (90) days to file any action against the governmental entity served with proper claim notice. However, should the governmental entity deny any such claim, then the additional ninety (90) days during which the claimant may file an action shall begin to run upon the claimant's receipt of notice of denial of claim from the governmental entity.

Miss. Code Ann. §§ 11-46-11(3) (2001).

¶71. Without waiving its position that notice was insufficient, Clay County's application of the tolling provision to the facts is as follows: Williams' accident occurred on November 1, 1999. Thus, she had one year from that date to file notice, or until November 1, 2000. Williams alleges to have sent the letter to Robinson on November 15, 1999. Adding three days delivery time, Clay County asserts Robinson would have received it on November 18. Thus, unless Williams received notice of a denial of claim, the SOL was tolled for 120 days. Clay County asserts it did not deny the claim during that time period and reminds the Court that it in fact issued a check to pay Williams for the only damages she claimed in her letter/notice: the torn pantsuit. After the tolling period (120 days) expired, Williams had an additional 90 days to file an action. Clay County asserts that after that total time period (210 days), Williams' claim was barred. Under its interpretation, upon giving notice, Williams had a total SOL period of 210 days, which expired on June 15, 2000. Because Williams' complaint was filed on January 31, 2001, Clay County asserts it is clearly barred by the SOL.

34

¶72. Williams argues that the November 1999 letter constituted notice of her claim and tolled the SOL for 120 days. Thus, she argues, the SOL expired on March 1, 2001. Because her complaint was filed on January 31, 2001, Williams argues it was well within the SOL. Under her interpretation, a claimant has one year to give notice. Upon doing so, the SOL is tolled for 120 days. After the 120 days expire, the one-year SOL resumes; in effect, giving the claimant a one year and 120 day SOL.

¶73. This precise issue is one of first impression in this Court. The Court of Appeals, however, considered the issue in *Marshall v. Warren County Bd. of Supervisors*, 831 So.2d 1211 (Miss. Ct. App. 2002).

¶74. In *Marshall*, the undisputed facts established that the cause of action accrued on July 31, 1999. Warren County received notice of the claim on March 6, 2000. The action was filed on November 2, 2000. The trial judge followed the same interpretation offered by Clay County in the case sub judice. He reasoned that the SOL was tolled for 120 days after Warren County received notice. Thus, the tolling period began on March 6, 2000, and ended on July 4, 2000. Following July 4, Marshall had an additional 90 days in which to file her claim, and the claim was time barred after October 2, 2000.

¶75. The Court of Appeals considered this Court's holding in *Roberts v. New Albany Separate School District*, 813 So. 2d 729 (Miss. 2002). In that case, Roberts' cause of action arose on August 8, 1998. On August 3, 1999, she gave the required notice, which tolled the

one-year SOL for a full 120 days, after which she received the full benefit the additional ninety day period in which to file her suit. *Id.* at (¶ 7).

¶76.   The Court of Appeals found the trial judge's ruling erroneous, because it had the "effect of shortening the statute of limitations. As the Court found in ***Roberts***, there is nothing to indicate that the Legislature intended to shorten the time frame for filing suit . . . ." ***Marshall*** at ¶ 7. Based on the facts of that case, however, the Court of Appeals affirmed. It determined that ***Roberts*** was distinguishable because, in that case, the claimant

> gave notice of her claim some five days before the one-year statute of limitations expired. Therefore, the court found that when calculating the time of the tolling provision, she received the benefit of the 'full measure of the 120 period.' In this case, Marshall filed her notice of claim nearly four months prior the expiration of the one year statute of limitations. Consequently, the 120-day tolling period expired during the one year time period. Keeping in mind that in amending Mississippi Code Annotated Section 11-46-11 (Supp. 1998), the Legislature did not shorten the one year statute of limitations, *we hold that the amended statute, 2002 Miss. Laws Chapter 380 (Senate Bill 3052), requires that a plaintiff received, at a minimum, ninety days to file his action following the running of the one year statue of limitations.*
>
> Marshall did not file her action until ninety-four days after the one year statute of limitations had run. The amendment to the statute requires, "[a]fter the tolling period has expired, the claimant shall then have an additional ninety (90) days to file any action against the governmental entity served with proper claim notice." 2002 Miss. Laws. Ch. 380 (S.B. 3052). Giving the statue plain meaning, we must find that Marshall's action is time-barred.

*Marshall*, at (¶¶ 8 - 9) (emphasis added). Thus, although it affirmed the dismissal of the action on other grounds, the Court of Appeals agreed with the position that Williams has taken here.

¶77.   In a concurring opinion, joined by Chief Judge McMillin, and Judges Thomas and Lee, Presiding Judge Southwick reiterated his opinion in ***Burge***, also a concurring opinion, that the

amendment was meant to shorten, rather than extend the SOL. Reasoning that the Act's tolling provisions are not written in the normal way, Judge Southwick determined that "'it is after the toling period has expired' that the 90 days commences, not after the running of the remainder of the one year statute of limitations." *Marshall*, at (¶ 14).

¶78. Presiding Judge Southwick found it significant that, in *Roberts*, this Court discussed only two time periods, to-wit, the 120 days of tolling, and then a subsequent 90 day period available for filing suit. This Court did not mention the five days of the one-year SOL that still would have remained. Judge Southwick noted that this Court held that the 1999 amendment "extended the period of time a notice of claim tolled the statute of limitations for actions brought against governmental entities under the Mississippi Tort Claims." *Roberts*, at 731. From this, Judge Southwick reasoned that a longer tolling period does not mean that the overall period to sue is longer. He concluded, "[d]epending on when the notice is filed during the one year time period to file, the effect may be to reduce the total time from injury to suit. The statute made the tolling period longer, i.e., the time for the government to consider the claim was extended, but the post-tolling time period to bring suit is always the same length - 90 days." *Marshall*, at (¶ 19).

¶79. Though susceptible to that interpretation, we do not read *Roberts* to imply or require that the one-year SOL is extinguished once notice is given. In this Court's opinion, the time remaining in the one-year SOL was not mentioned in *Roberts* because it simply was not necessary to the discussion.

37

¶80.     Section 11-46-11 (3) states that notice of claim serves to toll the SOL.  The word toll

is defined as follows:

> To bar, defeat, or take away . . . . *[t]o suspend or stop temporarily* as the statute
> of limitations is tolled during the defendant's absence from the jurisdiction and
> during the plaintiff's minority.

Black's Law Dictionary (emphasis added).  As Judge Southwick points out, the legislature has

the authority to defy the dictionary so long as the new meaning is discernible, ***Richardson v.***

***Canton Farm Equip.***, 608 So. 2d 1240, 1250-51 (Miss. 1992) (meaning of word or phrase

in statute can be different than common meaning); however, it is also a familiar maxim of

statutory interpretation that we must give words their literal meanings.  In addition, in

***Mississippi Power Co. v. Jones***, 369 So.2d 1381 (Miss. 1979), this Court held that "[w]here

the language used by the legislature in a statute is plain and unambiguous and conveys a clear

and definite meaning there is no occasion to resort to rules of statutory interpretation."  ***Jones***,

369 So.2d at 1388.

¶81.     As mentioned by the Court of Appeals majority in ***Marshall***, when it amended the Act,

there is nothing to indicate that the legislature intended to shorten the time frame for filing suit

which was provided in the previous version of the Act.  ***Marshall*** at ¶ 7.  Nor did it eliminate

or qualify the word "toll" in the statute.  There is no reason  to assume that the legislature

intended to change the ordinary meaning of the word toll.  Nor is there reason to assume that

the legislature intended to shorten the one-year SOL provided for in the Act.  Indeed, § 11-46-

11 (3) states that the SOL it provides shall control.

¶82.   ***Ellisville State School v. Merrill***, 732 So.2d 198 (Miss. 1999), occurred prior to 11-46-11's amendments.  There, the plaintiff filed notice one day before the expiration of the one-year SOL, then filed her complaint within the additional 95 day period.  This Court found that procedure proper. ***Id.*** at 202-03.

¶83.   In ***State v. Dampeer*** 744 So.2d 754, 756 (Miss. 1999), this Court held "when the proper requirements of bringing a claim for injury against a governmental agency in the State of Mississippi are met, including the giving of the proper notice, *the statute of limitations allows one year, plus ninety-five days* in which to bring the claim."  (emphasis added).

¶84.   In ***Chamberlin v. City of Hernando***, 716 So.2d 596 (Miss.1998), this Court held that "[t]he Act directs that all actions against political subdivisions shall be filed within one year of accrual. The only way the statute allows the *extension* of the one-year statute is to file the required notice of claim."  ***Id.*** at 601 (emphasis added).

¶85.   In ***Tie-Reace Hollingsworth ex rel. McDonald v. City of Laurel***, 808 So.2d 950, (Miss. 2002), this Court held that "*the amendment lengthening the statute of limitations* for claims brought under the Mississippi Tort Claims Act applies to causes of action accruing before the amendment was enacted which were not barred by the prior statute of limitations." ***Id.*** at 955 (emphasis added).

¶86.   Use of the words "extension" and "lengthening" in the above cases signifies that the SOL is not cut short by the giving of notice, but rather it is extended an additional 90 days following the 120 day tolling period.

¶87.   In *Burge v. Richton Municipal Separate School Dist.*, 797 So.2d 1062 (Miss. Ct. App. 2001), the Court of Appeals refused to allow a plaintiff to take advantage of the amendments to the additional time period allowable under the Act because these amendments were not yet in effect when the plaintiff's negligence claim against the school district accrued.  The Court of Appeals discussed the effect of the tolling provisions of the Act, stating:

> The action in this case accrued on December 17, 1998, the day that Lea walked onto school grounds and removed her daughter without a court order. The one-year statute of limitations in which to file a claim against the school district for its negligence would have run on December 17, 1999. *However, it is undisputed that a notice of claim was timely and properly filed by the Burges according to Miss. Code Ann. §§ 11-46- 11(1) (Supp.2000). Therefore, the statute of limitations on this action would be tolled for ninety-five days after December 17, 1999,* which would have allowed the Burges to filed their claim up until March 21, 2000. After March 21, 2000, the Burges' claim was lost.
>
> While it would appear, at first glance, from the amendments to §§ 11-46-11(3) found in the 2000 supplement, that the Burges would then have had an additional ninety days after March 21, 2000, to file the action against the school district, thereby giving them until June 19, 2000, this is not the case. Miss.Code Ann. §§ 11-46-11(3) (Supp.2000). As well, it is not the case that the Burges could argue that the minors' savings clause under Miss.Code Ann. §§ 11-46-11(4) (Supp.2000) would save their action here. Both of these provisions were not yet in effect at the time the action occurred on December 17, 1998.

797 So.2d at 1062-64.

¶88.   This quote implies that, if proper notice is given, the tolling provision simply tacks an additional 95 or 120 days on to the one-year SOL.  The amendments not yet in effect in *Burge* were in effect in the case sub judice.  Their effect in this case would have been to add 90 days to the one-year SOL after the expiration of the 120 day tolling/safe harbor provision.  Thus, provided she gave sufficient notice, Williams had until May 30, 2001, to file her complaint (or

one year and 210 days from November 1, 1999, the date of the accident). As her complaint was filed on January 31, 2001, Williams complaint was timely.

¶89. "Notice provisions encourage settlement of claims prior to entering litigation, therefore conserving valuable government resources. Further, notice to the governmental entity encourages corrective actions, where necessary, prior to litigation, therefore benefitting public health and welfare." ***Vortice v. Fordice***, 711 So. 2d 894, 896 (Miss. 1998). Adopting Presiding Judge Southwick's interpretation would be contrary to these underlying policies of the MTCA. An interpretation of the Act that causes the one-year SOL to be extinguished upon the giving of notice will discourage claimants from giving notice early. The agency being sued may be unaware of the dangerous instrumentality which caused the accident and the likelihood of future harm will increase; thus compromising the public health and welfare.

¶90. The claimant's time limit to seek redress will be diminished if she provides notice and prolonged if she waits. The citizen who is privy to this information will receive the maximum benefit of the statutory amendment and the average citizen will not. As this Court noted in ***Carr***:

> The purpose of the notice statute being to advise the city of the accident so that it may promptly investigate the surrounding circumstances, we see no need to endorse a policy which renders the statute a trap for the unwary where such purpose has in fact been satisfied.

733 So. 2d at 263. The interpretation offered by Clay County results in such a trap and is contrary to the precedent of this Court.

41

¶91. In addition, this interpretation is unfair to defendants. A claimant would have up to one year to investigate and develop her case. During this time, the defendant remains ignorant of the possibility of a claim against it. Upon filing notice, the plaintiff has only to wait a maximum of 210 days before filing suit. This creates an unfair advantage for the claimant in settlement posture and preparedness for trial. Moreover, as noted above, because the claimant is discouraged from giving prompt notice, the agency has no opportunity to mitigate the likelihood of other claims by repairing the harm-causing instrumentality.

¶92. Thus, we conclude that Williams' claim should not have been dismissed. Williams' interpretation of the tolling provisions of the Act are more in line with the legislative purpose of the Act and the precedent of this Court. In addition, Williams has stated a claim which, if proved, would entitle her to relieve. Clay County has not demonstrated that has been prejudiced by Williams' failure to comply with every requirement of the Act. Thus, 12 (b) (6) dismissal was premature and erroneous.[16]

## II. WHETHER WILLIAMS SUFFERED A LATENT INJURY THAT EFFECTIVELY TOLLED THE STATUTE OF LIMITATIONS?

¶93. Without waiving her substantial compliance argument, Williams asserts that, although she fell on November 1, 1999, she did not know the extent of her injury or that it would require surgery until March 2000. She argues that this ignorance was encouraged by Robinson, who assured her that her injury was not serious and that she should not go to see a doctor. Williams

---

[16]*See **Thornburg**, 741 So. 2d 220 (Miss. 1999) (finding dismissal improper where a medical center received notice and suffered no actual prejudice as a result of the claimant's failure to comply with the Act).

argues that the SOL did not begin until she discovered the injury, thus her complaint was timely filed.

¶94. This Court has held that, despite the absence of specific discovery language, the discovery rule applies to Tort Claims Act actions involving latent injuries. *See Henderson v. Un-Named Emergency Room, Madison County*, 758 So. 2d 422, 427 (Miss. 2000); *Barnes v. Singing River Hosp. Sys.*, 733 So. 2d 199, 205 (Miss. 1999. This Court has also held that "genuine disputes as to the ability to discover a latent injury are questions of fact to be decided by a jury." *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 168 (Miss. 1999) (citing *Schiro v. American Tobacco Co.*, 611 So. 2d 962, 962 (Miss. 1992)).

¶95. Thus, Williams' allegation that a latent injury tolls the statute of limitations until its discovery is properly founded in the case law of this State. However, Clay County asserts that Williams raises this allegation for the first time on appeal. It argues that Williams' failure to give the trial judge an opportunity to consider this aspect of her claim forecloses this Court's consideration of it. *See Pickens v. Donaldson*, 748 So.2d 684, 690 (Miss. 1999) (holding that the discovery rule did not toll statute of limitations in a medical malpractice action brought under the Act because the plaintiff made no claim that injury was latent, and offered no evidence that she did not or could not have discovered injury within the SOL).

¶96. Though she did not specifically plead in her complaint that the statute of limitations was tolled because she suffered a latent injury, Williams does allude to this fact. In paragraph V of her complaint, Williams alleges the following: "While Plaintiff's injuries did not

43

immediately appear to be serious, she began, shortly thereafter, to experience severe pain, and

required medical treatment." In addition, in an affidavit filed by Williams as a supplement to

her opposition to Clay County's motion to dismiss, she alleged the following:

> When I sent my letter to Robbie Robinson concerning my fall, I did not mention my personal injury. *This was because, at that time, the difficulties with my personal injury had not started.* However, when I started having medical problems, I talked about these both with Mr. Robinson and to Supervisors Shelton Dean and Darrell Meyers. We discussed my injuries at the Courthouse. This discussion occurred in March, 2000. I was told that the Board of Supervisors was going to have a meeting as to whether or not they would pay my medical bills because of my fall.

(emphasis added). Thus, her allegations that she suffered a latent injury were in fact before the

court, and they were known by Clay County.

¶97. A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. To grant the

motion there must appear to a certainty that the plaintiff is entitled to no relief under any set

of facts that could be proved in support of the claim. ( Miss. R. Civ. P. 12 cmt.). In the present

case, matters outside the pleadings were presented to and not excluded by the court;[17] thus,

Clay County's motion to dismiss should have been treated as one for summary judgment and

disposed of as provided in Rule 56. Miss. R. Civ. P. 12 (b).

¶98. Under Rule 56, "[t]he judgment sought shall be rendered forthwith if the pleadings,

depositions, answers to interrogatories and admissions of file, together with the affidavits, if

---

[17]Including: Williams' November 1999 letter to Robinson; Williams' affidavit in support of her response in opposition to Clay County's motion to dismiss; Robinson's March 16, 2000, letter to Williams' attorney;

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56 (c).

¶99. Considering Williams' allegations under either rule 12 (b) or rule 56 (c), it is clear that she raised the issue of latent injury. It is also clear that the trial judge failed to address this issue in his order of dismissal. Whether Williams suffered a latent injury that tolled the SOL SOL until she became aware of it is a material issue of fact, and it is disputed by Clay County. Other disputed (or undeveloped) issues include, inter alia: whether Williams told Clay County the name of her doctor during the March 2000 meetings (thus, arguably creating a duty on their part to ascertain the extent of her injuries - see *Thornburg*, ¶ 50, *supra*); whether Robinson's act of putting the county's insurer on notice precludes summary judgment;[18] whether Williams' actions substantially complied with the Act's notice requirements; what caused settlement negotiations to end and Williams to file suit; whether the statement that Williams should have her eyesight checked constituted a constructive denial of her claim.

¶100. In *Jackson v. City of Booneville,* 738 So. 2d 1241 (Miss. 1999), the plaintiff filed her complaint prior to filing her notice of claim. In fact, the plaintiff filed her notice almost one year after the accident and two weeks prior to the expiration of the SOL. Justice Smith, writing for a unanimous court, held this procedure sufficient, finding that "by filing her complaint first, Jackson has simply reversed the order which the statute requires, i.e., first the notice of claim

---

[18]*See **Smith County Sch'l Dist. v. McNeil**, 743 So.2d 376 (Miss. 1999) (where the Court found a material issue as to whether the district's insurance carrier's actions would estop the district from claiming lack of notice).

and then file suit." *Id.* at 1246 (citing *City of Pascagoula v. Tomlinson*, 741 So. 2d 224, 228-29 (Miss. 1999)). The Court discussed the proper remedy for failure to comply with the ninety-day waiting period required by the statute, noting that dismissal of the suit was unwarranted in light of substantial compliance and that the better approach would be for the government entity to request the trial court issue an order staying the lawsuit until such time as the entity has been given the benefit of the waiting period. *Id.* Where no stay is requested, the issue is waived. *Id.*

¶101. In the case at bar, Clay County did not request a stay after Williams gave her second notice of claim on February 13, 2001. Therefore, it has waived its right to a ninety day waiting period. Because Williams suffered a latent injury which was not discovered until March 2000, the SOL expired in March 2001. Since her complaint and second notice of claim where both filed by February 12, 2001, albeit in reverse order, both were within the one-year SOL.

¶102. This Court concludes that Williams effectively informed both Clay County and the trial judge that she suffered a latent injury. Because this allegation, taken as true, works to toll the SOL, summary dismissal of Williams' claim was improper.

### III. WHETHER CLAY COUNTY SHOULD BE EQUITABLY ESTOPPED FROM ASSERTING THAT THE STATUTE OF LIMITATIONS HAS RUN ON WILLIAMS' CLAIM BECAUSE IT PROMISED HER IT WOULD PAY HER MEDICAL BILLS?

¶103. "Inequitable or fraudulent conduct must be established to apply the doctrine of equitable estoppel to a statute of limitations." *Trosclair v. Miss. Dep't. of Transp.*, 757 So.2d 178, 181 (Miss. 2000). "Estoppel is action or nonaction that induces another's reliance thereon, either

46

in the form of action or nonaction, to his or her detriment." ***Carr v. City of Shubuta***, 733 So.

2d at 265. "Although the doctrine of estoppel is not applied as freely against governmental

agencies as it is in the case of private persons, [governmental entities] are not immune." ***Id.***

Additionally, this Court has recognized that:

> estoppel may be available as a defense against the government if the government's conduct would work a serious injustice and if the public's interest would not be unduly harmed by the imposition of estoppel. In each case the court must balance the injustice that might be caused if the estoppel doctrine is not applied against the public interests at stake if the doctrine is implied.

***Id.***

¶104. Williams argues that the March 16, 2000, telephone conversation with Robinson,

wherein he told her that the County has always been willing to pay any and all valid medical

claims created an estoppel. This conversation and promise was confirmed in a February 13,

2001, letter from Robinson to Williams' attorney. Williams also alleges that an agent of the

County made light of her injury when she informed it of the extent of her injuries. Williams

argues that these two events create an estoppel, barring Clay County from asserting that the

SOL has expired.

¶105. Clay County asserts that "[t]here is simply no record that there was any representation

by defendant prior to the running of the period of limitations on which plaintiff ostensibly

relied in any way to fail to file suit." This assertion overlooks the fact that Robinson told

Williams in March 2000 that the County would pay all valid medical claims. He admitted as

much in his February 16, 2001, letter to Waide. It is reasonable to assume that once Williams

47

had been assured that Clay County would pay all her medical bills, there was no reason for her to communicate further with the County until her complete medical damages were known.

¶106. Clay County points out that Williams has not presented any medical bills. However, Williams has alleged that she required surgery to repair her injuries. This allegation must be taken as true. She has also alleged that Supervisors Dean and Meyers told her that the Board of Supervisors was going to have a meeting to decide whether to pay her medical bills. Williams was justified in relying on this representation.

¶107. Clay County's actions, at least through Robinson, indicated a desire to enter into settlement negotiations. Though alone insufficient to toll the SOL,[19] Clay County's settlement attempts may have created an estoppel.

¶108. In *Ferrer v. Jackson County Bd. of Sup'rs*, 741 So.2d 216, 218 -19 (Miss. 1999), this Court held that held that the county board of supervisor's payment of an injured driver's property damage claim and its settlement offer for the driver's personal injury claim estopped the board from the raising the issue of notice requirement. The Court found that the "prolonged, continuous and extensive" communication between the plaintiff and the Board, including settlement offers made by the Board, substantially complied with the notice requirement and constituted waiver of notice and estoppel." *Id.* at 218 -19.

---

[19]This Court has held that good faith settlement negotiations alone are not sufficient to waive the statute of limitations under the Mississippi Tort Claims Act. *Miss. Dep't. of Pub. Safety v. Stringer*, 748 So.2d 662, 667 (Miss. 1999).

¶109. In the instant case, Clay County sought to settle this claim weeks after it occurred by paying Williams' property damage claim with a check entitled "full and final settlement." Later, it promised to pay her personal injury claim. Thus, based on *Ferrer*, Clay County's actions may, have created an estoppel with regard to its ability to assert lack of claim notice.

¶110. In *Miss. Dep't of Public Safety v. Stringer*, 748 So.2d 662 (Miss. 1999), this Court declined to find an estoppel that would prevent the State from asserting a statute of limitations defense to a personal injury claim arising out of a car accident because the State had diligently worked with the claimant to resolve his claim, there was no allegation or evidence that the State misled him into believing that he need not comply with the SOL, and there was never any representation by the State that the SOL was tolled. *Id.* at 667.

¶111. *Stringer* cited with approval the holding of New Mexico's highest court in *Molinar v. City of Carlsbad*, 105 N.M. 628, 735 P.2d 1134, 1137 (1987), where that court found that "[i]t is clear that offers or promises of settlement, *in connection with other conduct of defendants upon which plaintiffs have reasonably relied*, may have the effect of tolling the statute of limitations." *Id.* at 1137 (emphasis added).

¶112. *Stringer* noted the previous holding in *Carr*, that "while inequitable or fraudulent conduct does not have to be established to estop an assertion of an inadequate notice of claim defense, inequitable or fraudulent conduct *must* be established to estop a party from asserting a statute of limitations defense." *Carr v. Town of Shubuta*, 733 So.2d at 265. Concluding that

good faith settlement negotiations alone are not sufficient to toll the SOL, the Court held that the claimant had failed to establish an estoppel.

¶113. In the case sub judice, Williams has alleged that Clay County promised to pay her medical bills. Robinson's statement to Williams that the County would pay her medical bills is a promise rather than settlement negotiations. It is not qualified or conditional and Williams' reliance on that promise was reasonable. Williams has also alleged that Clay County officials, when informed of the nature of her injuries and confronted with her request to see a doctor, insulted her and refused to meet with her. This conduct, in combination with Clay County's settlement attempts, was sufficient, to estop the defendant from now asserting the SOL defense.

¶114. Moreover, in keeping with the admonition in *Carr* that the interest of the claimant in seeking redress should be weighed against the prejudice to the government entity,[20] this Court concludes that Williams' interests prevail. Clay County has not alleged or proved that it will be prejudiced if Williams' suit is allowed to go forward. Conversely, without reimbursement from Clay County, Williams' personal injury and property loss will remain uncompensated. As Clay County agreed to assume this responsibility and because Williams reasonably expected that it would fulfill that promise, we conclude that Clay County should be equitably estopped from breaking that promise.

[20]733 So. 2d at 265.

¶115. Williams' actions substantially complied with the notice requirements of the Act and effectively tolled the SOL. She told Robinson, the county's statutory agent of her accident on three separate occasions. Because she suffered a latent injury, Williams did not provide notice of the extent of her injuries until several months after her fall. Once the serious nature of her injuries was determined, she arranged a meeting with two supervisors and provided them with that information. Thus, the SOL was tolled until March 2000, when she discovered the extent of the damage. Clay County, through Robinson, tried to pay Williams' property damage and represented to Williams that it would pay her medical bills. Williams' reliance on this promise was reasonable. Thus, Clay County should now be estopped from asserting a SOL defense.

¶116. This case should not have been dismissed at this early stage. Williams has alleged facts that state a claim for relief. Moreover, it is unclear from the order of dismissal whether the trial judge applied a strict or substantial compliance standard to Williams' claim. Thus, we should reverse and remand.

**COBB, JUSTICE, DISSENTING:**

¶117. In my view, the one-year statute of limitations provided in Miss. Code Ann. § 11-46-11(3) may not be shortened to less than one year. Because the plurality concludes otherwise, I must respectfully dissent.

¶118. The issue of tolling under the MTCA has been dealt with a number of times by both this Court and the Mississippi Court of Appeals, each time with a different set of facts and a different outcome. This Court has not endorsed a specific formula for computing the date for

a timely filing under MTCA, and, based on the present case, it is not clear whether the formula proposed by the Court of Appeals is one that should be followed. This question of law should be simple and predictable, not one that must be determined by this Court on each different set of facts.

¶119. The MTCA was amended in 1999 [21] "to clarify notice of claim requirements under the Tort Claims Act; and for related purposes." The following is the pertinent text of the statute after modification, with the additional text underlined, as follows:

> (3) All actions brought under the provisions of this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after; provided, however, that the filing of a notice of claim as required by subsection (1) of this section shall serve to toll the statute of limitations for a period of ninety-five (95) days from the date the chief executive officer of the state agency receives the notice of claim, or for one hundred twenty (120) days from the date the chief executive officer or other statutorily designated official of a municipality, county or other political subdivision receives the notice of claim, during which time no action may be maintained by the claimant unless the claimant has received a notice of denial of claim. After the tolling period has expired, the claimant shall then have an additional ninety (90) days to file any action against the governmental entity served with proper claim notice. However, should the governmental entity deny any such claim, then the additional ninety (90) days during which the claimant may file an action shall begin to run upon the claimant's receipt of notice of denial of claim from the governmental entity. All notices of denial of claim shall be served by governmental entities upon claimants by certified mail, return receipt requested, only. For purposes of determining the running of limitations periods under this chapter, service of any notice of claim or denial of notice of claim shall be effective upon delivery by the methods statutorily designated in this chapter. The limitations period provided herein shall control and shall be exclusive in all actions subject to and brought under the provisions of this chapter, notwithstanding the nature of the claim, the label or other characterization the

---

[21] 1999 Miss. Laws ch. 469 (H.B. 778).

claimant may use to describe it, or the provisions of any other statute of limitations which would otherwise govern the type of claim or legal theory if it were not subject to or brought under the provisions of this chapter.[22]

Miss. Code Ann. § 11-46-11 (1999) (emphasis added). Prior to the 1999 amendments, "filing the notice tolled the statute of limitations for ninety-five days, and generally resulted in an action being timely filed so long as the required notice was given, and the action was filed no later than one year plus ninety-five days after it arose." *Marshall v. Warren County Bd. of Supervisors*, 831 So.2d 1211, 1212 (Miss. Ct. App. 2002). *See also* *Burge v. Richton Mun. Separate Sch. Dist.*, 797 So.2d 1062, 1063-64 (Miss. Ct. App. 2001).

¶120.  When the Court of Appeals decided the *Burge* case, the 1999 amendment to the statute had been passed, but the pre-1999 statute was applied. Although dicta, the court discussed the ramifications of the 1999 modification and said that the tolling period of 95 days would increase the statute of limitations from one year to one year and 95 days, and if proper notice had been given, an additional 90 days would have been added:

> The action in this case accrued on December 17, 1998, the day that Lea walked onto school grounds and removed her daughter without a court order. The one-year statute of limitations in which to file a claim against the school district for its negligence would have run on December 17, 1999. However, it is undisputed that a notice of claim was timely and properly filed by the Burges according to Miss.Code Ann. § 11-46- 11(1) (Supp.2000). Therefore, the statute of limitations on this action would be tolled for ninety-five days after December 17, 1999, which would have allowed the Burges to filed their claim up until March 21, 2000. After March 21, 2000, the Burges' claim was lost. While it would appear, at first glance, from the amendments to § 11-46-11(3) found in the 2000 supplement, that the Burges would then have had an additional

---

[22]This statute has been modified twice since 1999 to incorporate tolling for infancy and unsound mind. Those changes do not affect this portion of the statute.

ninety days after March 21, 2000, to file the action against the school district, thereby giving them until June 19, 2000, this is not the case. Miss.Code Ann. § 11-46-11(3) (Supp.2000). As well, it is not the case that the Burges could argue that the minors' savings clause under Miss.Code Ann. § 11-46-11(4) (Supp.2000) would save their action here. Both of these provisions were not yet in effect at the time the action occurred on December 17, 1998.

*Burge*, 797 So.2d at 1064 (¶ 5-6).

¶121. Presiding Judge Southwick made a good case in his concurring opinion that the statute should be viewed as giving a plaintiff up to one year to give **notice** of claim (rather than one year to commence actions). Once a notice is given, the government has 95-120 days to respond. After this period, or at the time the plaintiff receives a denial, the plaintiff has 90 days to file a complaint.

As can be seen, prior to 1999 the statute provided only that the one year statute of limitations was "tolled" for 95 days by the filing of notice. 1993 Miss. Laws ch. 476, § 5. To "toll" a statute of limitations is to "suspend or stop temporarily...." BLACK'S LAW DICTIONARY 1488 (6th ed.1990). Thus the one year period, whether it was interrupted after one day or after eleven months and 29 days, was suspended for 95 days and then resumed at the point that it had earlier been suspended. As a result of the 1999 change, the filing of a notice now no longer just suspended the one year statute of limitations. The one year limitations period is still said to be "tolled," but the statute then provides that the 90 day period within which to file suit begins at the end of the tolling period. True, when the statute provides that the claimant has "an additional 90 days" to file after the tolling period has run, this creates some minimal ambiguity. "Additional" to what? Is it to the entire tolling period plus the one year or just in addition to the end of the tolling period? What "additional" means is made clear by the next sentence, which provides that if the governmental entity rejects the claim in less time than the tolling period would allow, "then the additional ninety (90) days during which the claimant may file an action shall begin to run upon the claimant's receipt of notice of denial of claim from the governmental entity." The phrase "additional ninety days" surely means the same in both places. Therefore, once the 120 days has expired or once the governmental body has rejected the claim if that is sooner, the claimant has 90 days within which to file suit.

*Burge*, 797 So.2d at 1067-68 (¶ 25). Theoretically, this interpretation could also significantly shorten the one-year statute of limitations. For example, if a claimant files notice 30 days after the injury, and the government denies the claim 30 days later, the statute of limitations for such claimant would bar complaints after 150 days. In my view, that was not the intent of the Legislature when it amended Section 11-46-11.

¶122. This Court's first impression in interpreting the 1999 amendment was in ***Roberts v. New Albany Separate Sch. Dist.***, 813 So.2d 729 (¶ 4) (Miss. 2002). The plaintiff sent notice of her claims to the superintendent of the school district 5 days prior to the one-year statute of limitations running, and subsequently filed her complaint 125 days later. This Court concluded that, on the facts of the case, the plaintiff's complaint was timely.

> She gave notice of her claim to the school district within the one- year statutory time period on August 3, 1999, tolling the statute of limitations for 120 days. One hundred twenty-five days later, after the 120- day period allowed for the school district to provide notice of denial of claim but within the subsequent 90-day period available for filing suit, Roberts filed the present action. There is no notice of denial of claim in the record so the full measure of the 120-day period runs in Roberts's favor.

*Id.* at 732 (¶ 7). The Court gave no guidance as to interpretation based on other possible facts. Additionally, it is not clear that this meant that the one-year statute of limitations would be extended for 120 days. The language used:"the full measure of the 120-day period runs in [plaintiff's] favor" seems to be based on the fact that the government did not respond to the claim within the 120 day period, not on the concept that the statute of limitations was extended for this period of time. Thus, ***Roberts*** leaves open these questions.

¶123. Subsequent to **Roberts**, the Court of Appeals decided **Marshall**, where the plaintiff filed a claim with more than 120 days remaining of the one-year statute of limitations. The circuit court made a determination, along the same lines as that expounded by Presiding Judge Southwick in **Burge**, that the 120 day tolling period commenced upon the filing of notice, and the 90 day time in which an action could be brought began immediately after this. The Court of Appeals majority determined that in this fact case, the statute of limitations would actually be less than one year. Reasoning that the legislature did not shorten the statute of limitations with the 1999 modification, the Court of Appeals held that the statute "requires that a plaintiff receive, at a minimum, ninety days to file his action following the running of the one year statute of limitations." **Marshall**, 831 So.2d at 1213 (¶ 8). Presiding Judge Southwick concurred with this result, but reiterated his earlier discussion in **Burge,** stating that the statute of limitations could be shorter than one year. **Id.** at 1214-15.

¶124. Finally, in **Moore v. Memorial Hospital of Gulfport**, 825 So.2d 658 (Miss. 2002), this Court stated that "the one year statute of limitations is tolled for 120 days after the filing of the notice of claim. Therefore, if the cause of action accrued on August 31, 1998, the amended complaint which was filed on December 16, 1999, was timely." **Id**. at 666-67. This Court did not make a distinction here whether the timing of the notice was important, or if it was following the rule formulated by the Court of Appeals in **Marshall**. This case was similar to **Roberts** in that the statutory notice was filed within the 120 day period prior to the running of the statute of limitations, and the suit was filed within the 90 day period after the 120 day

period ran. The suit was also filed within one year and ninety days from the cause of action. The *Moore* opinion does not support this Court's majority opinion in the present case, which states that the statute of limitations may be shortened to less than one year. In fact, the Court in *Moore* cited *Hollingsworth ex rel. McDonald v. City of Laurel*, 808 So.2d 950 (Miss. 2002), for the proposition that "where an amended statute remedially lengthens a statute of limitations, [this Court] will apply the amendment to existing causes." *Id.* at 667 n.8 (referring to the 1999 amendment to § 11-46-11). *Hollingsworth* is unclear as to when the statutory notice was given, so it does not help determine the tolling question in early notice cases.

¶125. In the present case, whether notice is determined to have been given on November 15, 1999, or March 16, 2000, the result of commencing the 120 day tolling period upon notice, and allowing complaints to be brought in the following 90 days, works to reduce the statute of limitations to less than one year. None of the previous Court of Appeals or Supreme Court decisions interpreting this statute supports this conclusion. The decision in *Marshall,* that the Legislature did not intend to shorten the one year statute of limitations provided by the MTCA to something less than one year, is correct in my view.

¶126. In order to lend some certainty to the determination of the timeliness of filing complaints under the MTCA, this Court should annunciate a clear procedure. Combining the efforts of both courts, in my view the bright line interpretation should be as follows: Actions must be brought within one year. Notice must precede any action by at least 90 days. When notice is given within 95 or 120 days (depending on the government entity given notice) of

the running of the statute, the 95 or 120 day tolling period begins.  During this period, no action may be brought by the claimant.  At the end of this 95 or 120 day tolling period, **or** whenever a denial of claim is received, the claimant then has 90 days to file suit.  When notice is given prior to the 95/120 cut-off date, no action may be taken by the claimant for 95/125 days.  A complaint may then be filed within one year plus 95/120 days of the cause of action date.

¶127.  Applying this rule to the present case, the plaintiff's case is not time barred.  Because the notice was directed to a county entity, the tolling period is 120 days.  Because the notice was given prior to the 120 day cut-off, a suit must be filed within one year plus 120 days of the cause of action.  The date of injury was November 1, 1999; therefore the last day for filing suit was February 28, 2001.  The plaintiff in this case filed her timely lawsuit on January 31, 2001.

¶128.  Thus, the circuit court erred in dismissing this action as untimely.  I would reverse its judgment and remand this case for further proceedings.  For these reasons, I respectfully dissent.

**PITTMAN, C.J., JOINS THIS OPINION.**